```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION


RAYTHEON COMPANY,                §
                                 §
            Plaintiff,           §
                                 §
v.                               §
                                 §
M/V SEABOARD EXPLORER II,        §
her engine, tackle, boilers,     §
etc.,                            §
                                 §   CIVIL ACTION NO. H-09-1447
v.                               §
                                 §
CNAN NORD S.P.A., CNAN           §
AMERICA, INC., DHL GLOBAL        §
FORWARDING, GFAST, INC., and     §
SHIPPERS STEVEDORING COMPANY,    §
                                 §
            Defendants.          §
```

**MEMORANDUM OPINION AND ORDER**

Raytheon Company brings this action against Shippers Stevedoring Company ("Shippers") alleging negligence, breach of contract, and breach of implied warranty of workmanlike performance concerning damage that occurred during shipment to an electrical generator for which Shippers provided stevedoring services. Raytheon's claims against all defendants except for Shippers and the M/V Seaboard Explorer II have been dismissed. Pending before the court is Shippers' Motion for Summary Judgment or, Alternatively, Motion for Partial Summary Judgment (Docket Entry No. 37). Shippers argues that it is entitled to summary judgment because Raytheon filed suit outside of the limitations period provided by the Carriage of Goods at Sea Act ("COGSA") or,

alternatively, that Shippers is entitled to partial summary judgment that its liability is limited to $500 due to the COGSA package liability limitation. Also pending is Raytheon's Cross-Motion for "No Evidence" Partial Summary Judgment Against Shippers (Docket Entry No. 39), which argues that the COGSA limitations invoked by Shippers do not apply to this action. For the reasons explained below, the court will deny Shippers' motion and grant Raytheon's motion.

## I. Factual and Procedural Background

This action concerns damage that occurred during shipment to an electrical generator that Raytheon was shipping from the Port of Houston to Algeria on the M/V Seaboard Explorer II. Raytheon is a manufacturing and technology company based in Waltham, Massachusetts.[1] Shippers is a Texas corporation that provides stevedoring services.[2] CNAN Nord S.p.A ("CNAN") is a foreign corporation based in Algeria.[3] CNAN is the owner and manager of the M/V Seaboard Explorer II.[4]

**A. The Accident**

---

[1] Schedule A, Exhibit to First Amended Complaint, Docket Entry No. 4, p. 8.

[2] Id. at 9.

[3] Id. at 8.

[4] CNAN Nord S.p.A.'s Amended Answer to Plaintiff's First Amended Complaint, Docket Entry No. 18, p. 4.

In February of 2008 Raytheon and CNAN agreed that CNAN would transport a 17-kilowatt generator from the Port of Houston to Algeria onboard the M/V Seaboard Explorer II.[5] While the parties do not dispute that this agreement existed, there is no written contract governing the agreement because the accident at issue occurred before CNAN issued a bill of lading for the generator. Raytheon alleges, and Shippers does not dispute, that Shippers received Raytheon's generator in the Port of Houston on February 6, 2008, and that Shippers agreed to provide stevedoring services to load the generator onto the M/V Seaboard Explorer II.[6] The parties have not alleged that any contract was formed between Raytheon and Shippers. At some point prior to February 15, 2008, Shippers also received a large water brake from another party that was also to be shipped on the M/V Seaboard Explorer II.[7] Shippers admits that on February 15, 2008, it loaded Raytheon's generator onto the ship.[8] It also admits that while it was loading the large water brake onto the ship, the brake dropped and damaged Raytheon's generator.[9] The

---

[5] First Amended Complaint, Docket Entry No. 4, ¶ 8; CNAN Nord S.p.A.'s Amended Answer to Plaintiff's First Amended Complaint, Docket Entry No. 18, p. 5.

[6] First Amended Complaint, Docket Entry No. 4, ¶ 12.

[7] Id. ¶¶ 11-13.

[8] Defendant Shippers Stevedoring Company's Original Answer, Docket Entry No. 8, ¶¶ 12-14.

[9] Id.

generator was severely damaged, effectively reducing it to scrap.[10] Raytheon seeks damages of $250,000.[11]

**B.   Procedural Background**

Raytheon brought this action on May 13, 2009, pleading admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and Federal Rule of Civil Procedure 9(h) (Docket Entry No. 1).  On July 20, 2009, DHL Global Forwarding brought cross-claims against all of its co-defendants seeking indemnity and contribution (Docket Entry No. 19).  On December 4, 2009, GFAST Inc. brought cross-claims against all of its co-defendants seeking indemnity and contribution (Docket Entry No. 32).  Also on December 4, 2009, Shippers brought cross-claims against all of its co-defendants seeking indemnity and contribution (Docket Entry No. 33).  On January 25, 2010, the court dismissed all causes of action brought by Raytheon against DHL Global Forwarding (Docket Entry No. 34).  On January 27, 2010, the court dismissed all claims and cross-claims brought against CNAN Nord SpA and CNAN America, Inc. (Docket Entry No. 36).  On May 17, 2010, the court dismissed all claims and cross-claims brought against Gfast, Inc. (Docket Entry No. 44).

On February 3, 2010, Shippers filed its Motion for Summary Judgment or, Alternatively, Motion for Partial Summary Judgment

---

[10]Damage Report by Dufour Laskay & Strouse, Inc., Exhibit B to Plaintiff's Designation of Expert Witnesses, Docket Entry No. 38, pp. 4-5.

[11]Id. ¶ 17.

(Docket Entry No. 37). Shippers argues that COGSA limitations on liability should apply to this action under the bill of lading that CNAN would have issued to Raytheon if the shipment had gone as planned. Shippers argues that under Fifth Circuit precedent Shippers, as an agent of CNAN, is able to take advantage of the Himalaya Clause in CNAN's usual bill of lading. A Himalaya clause extends the carrier's protections under the bill of lading to the carrier's agents under certain circumstances. Among these protections are a one-year statute of limitations and a package limitation of liability of $500 under COGSA, 46 U.S.C. § 30701 hist. n. (2006) (previously codified as 46 U.S.C. app. § 1303(6) and § 1304(5)).[12] Shippers argues that Raytheon's claims should be dismissed because Raytheon filed suit more than a year after the accident, and thus failed to comply with COGSA's one-year statute of limitations. Shippers argues in the alternative that its potential liability is limited to $500 under the COGSA package limitation of liability.

On February 8, 2010, Raytheon filed a Cross-Motion for "No Evidence" Partial Summary Judgment Against Shippers (Docket Entry

---

[12]COGSA was previously codified in the appendix to Title 46 of the U.S. Code. When Title 46 was recodified in 2006 by Pub. L. 109-304, Oct. 6, 2006, 120 Stat. 1485, COGSA was not included except as a statutory note to the first section of the Harter Act, 46 U.S.C. § 30701. See David W. Robertson & Michael F. Sturley, Recent Developments in Admiralty and Maritime Law at the National Level and in the Fifth and Eleventh Circuits, 32 TUL. MAR. L.J. 493, 500 (2008) (explaining the codification issues). COGSA was not repealed by the recodification. See, e.g., Ambraco, Inc. v. Bossclip B. V., 570 F.3d 233, 237 (5th Cir. 2009) (applying COGSA).

No. 39).  Raytheon argues that Shippers is not entitled to claim the COGSA limitations under the bill of lading's Himalaya clause because the Himalaya clause under its plain meaning does not apply in this instance.  Raytheon argues that the clause "applies by its plain terms only to services performed under or in connection with the bill of lading 'constructively issued' for the generator."[13]  Since the accident occurred while Shippers was performing stevedoring services for different cargo under a different bill of lading, and after Shippers' employment related to the generator had ceased, Raytheon argues that the carrier's protections under the generator bill of lading do not extend to Shippers.

## II.  **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  FED. R. CIV. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

---

[13]Plaintiff's Response to Defendant Shippers' Motion for Summary Judgment and Cross-Motion for "No Evidence" Partial Summary Judgment Against Shippers, Docket Entry No. 39, p. 2.

essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S.Ct. at 2553-2554).

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.  Id. (citing Celotex, 106 S.Ct. at 2553-2554).  In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  Little, 37 F.3d at 1075.

### III. The Motions for Summary Judgment

The central issue in the parties' cross-motions for summary judgment is whether COGSA limitations apply to Raytheon's claims via the Himalaya clause in the bill of lading.  Because this is a question of law and there are no material facts at issue, summary judgment is appropriate.

**A.    The Bill of Lading**

Because it is undisputed that CNAN never issued a bill of lading for the Raytheon generator, the court must first determine whether the terms of CNAN's blank Bill of Lading are relevant to this action.  Shippers argues that the terms of CNAN's blank Bill of Lading, which CNAN would have issued if the accident had not happened, should apply in this action.

The Fifth Circuit has long recognized that the terms of a bill of lading that would have been issued, but did not because the cargo was damaged before the bill of lading could issue, can nonetheless bind the parties.  In Luckenbach S.S. Co., Inc. v. Am. Mills Co., 24 F.2d 704, 705 (5th Cir. 1928), the Fifth Circuit held that a bill of lading term that exempted a carrier from liability for loss by fire was effective even though the bill of lading did not issue until after a fire had damaged the goods at issue.  The court stated, "[A] shipper, in the absence of a special contract, must be presumed to deliver his goods on the terms and conditions usually and customarily imposed by the carrier in the regular course of business."  Id.  In Baker Oil Tools v. Delta Steamship Lines, Inc., 562 F.2d 938, 940 (5th Cir. 1977), the Fifth Circuit also recognized that if cargo is damaged before it is loaded, and a bill of lading does not issue covering that cargo, the standard terms of the carrier's bill of lading nonetheless apply.  The court held the parties to the terms of the bill of lading that would have issued.  Id.  In Uncle Ben's Int'l Division of Uncle Ben's, Inc. v.

-8-

Hapag-Lloyd Akteingesellschaft, et al., 855 F.2d 215, 217 (5th Cir. 1988), the Fifth Circuit reiterated the rule of Baker Oil, holding that COGSA terms applied via a bill of lading to damage claims regarding a rice shipment even though the damage occurred before the bill of lading issued.  These decisions recognize the commercial reality that a bill of lading, which serves as both a document of title and as the written agreement between the parties, generally does not issue until after cargo has been loaded onto a ship.

The court concludes that at the time the damage to the generator occurred the agreement between Raytheon and CNAN was governed by the terms of CNAN's standard Bill of Lading.  The court will refer to this constructively issued contract as the Generator Bill of Lading.

**B.   Himalaya Clauses**

Clauses in maritime contracts extending liability limitations to additional parties are called Himalaya clauses after an English case, Adler v. Dickson, [1955] 1 Q.B. 158 (C.A.), which involved the steamship Himalaya.[14]   See Norfolk S. Ry. Co. v. Kirby, 125

---

[14]A passenger injured on the Himalaya successfully sued the negligent master and boatswain because the carriage contract exempted the carrier from liability but did not extend any such exemption to the carrier's servants or agents. See Judge John Brown's lengthy historical footnote in Brown & Root, Inc. v. M/V Peisander, 648 F.2d 415, 418 n.5 (5th Cir. 1981).  Interestingly, the case from which Himalaya clauses derive their name had nothing to do with either cargo or bills of lading.

S.Ct. 385, 391 n.2 (2004). Regarding the proper interpretation of such clauses the Supreme Court has stated that "there is no special rule for Himalaya Clauses," and that "contracts for carriage of goods by sea must be construed like any other contracts: by their terms and consistent with the intent of the parties." Id. at 397.

Where the terms of a Himalaya clause call for it, courts have extended COGSA limitations of liability to stevedores. See Brown & Root, Inc. v. M/V Peisander, 648 F.2d 415, 425 (5th Cir. 1981) (extending the carrier's $500 package liability limitation under COGSA to a stevedore). Before considering the application of COGSA limitations to this action, however, the court must first determine whether the Himalaya clause at issue applies to the accident that damaged Raytheon's generator.

**C.   Does the Himalaya Clause Apply?**

The court construes a Himalaya clause by its terms and according to the intent of the parties. See Kirby, 125 S.Ct. at 397. The Himalaya clause in CNAN's Bill of Lading states:

> 18.  "Himalaya" Clause.
> It is hereby expressly agreed that no servant or agent of the carrier (including every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Shipper, Consignee or Owner of the goods or to any holder of this Bill of Lading for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment and without prejudice to the generality of the foregoing provisions in this Clause, every exemption, limitation, condition and liberty herein contained and every right, exemption from

-10-

>      liability, defence and immunity of whatsoever nature
>      applicable to the carrier or to which the carrier is
>      entitled hereunder shall also be available and shall
>      extent [sic] to protect every such servant or agent of
>      the carrier acting as aforesaid and for the purpose of
>      all the foregoing provisions of this Clause and the
>      carrier is or shall be deemed to be acting as agent or
>      trustee on behalf of and for the benefit of all persons
>      who are or might be his servants or agents from time to
>      time (including independent contractors as aforesaid) and
>      all such persons shall to this extent be or be deemed to
>      be parties to the contract in or evidenced by this Bill
>      of Lading.[15]

The language of the Himalaya clause limits its scope in significant ways.  The clause excludes the agent from liability to a specified group -- "the Shipper, Consignee or Owner of the goods or to any holder of this Bill of Lading" -- for losses arising from the agent's "act, neglect or default . . . while acting in the course of or in connection with his employment."  Likewise, the carrier's defenses and immunities that extend to the agent only apply to those actions taken when the carrier is "acting as aforesaid," which means "while acting in the course of or in connection with his employment."  Furthermore, the clause states that "for the purpose of all the foregoing provisions of this Clause," i.e., the provisions limiting the agent's liability and extending the carrier's defenses to the agent, such agents shall "be deemed to be parties to the contract in or evidenced by this Bill of Lading." Reading these clauses together, the plain meaning of the Himalaya

---

[15]International Bill of Lading, Exhibit A to Shippers Stevedoring Company's Motion for Summary Judgment or, Alternatively, Motion for Partial Summary Judgment (Docket Entry No. 37), ¶ 18.

clause is that the carrier's defenses extend to the carrier's agent when the agent is "acting in the course of or in connection with his employment" pertaining to "this Bill of Lading."  In the present context, this means that Shippers can only assert CNAN's COGSA limitations of liability under the Himalaya clause if Shippers' "act, neglect or default" occurred while Shippers was "acting in the course of or in connection with [its] employment" pertaining to the particular cargo addressed in the constructively issued Bill of Lading.

Although Shippers was acting in the course of its employment by CNAN when it loaded Raytheon's generator onto the ship, the accident occurred after Shippers had finished loading the generator and had moved on to other pieces of cargo.  The key question is at what time did Shippers' course of employment connected to the Raytheon Bill of Lading end.  If, as Raytheon argues, the course of employment ended when Shippers safely loaded the generator into the hold of the ship, then Shippers is not entitled to assert the carrier's COGSA limitations under the Himalaya clause.  But if the course of employment ended at some later time, Shippers may be entitled to assert the COGSA limitations.

Shippers argues that "[t]here is no clause in the contract limiting 'the employment' of Shippers to 'the performance of the contract,'" and that "the clause in this matter is very broad."[16]

---

[16]Shippers Stevedoring Company's Reply to Plaintiff's Response to Motion for Summary Judgment and Response to Plaintiff's Cross-
(continued...)

While Shippers does not specify at what point it contends its protections under the Himalaya clause ended, it implies that any action it took in connection with employment for any party during the life of the Bill of Lading would have been covered under the protections of the Himalaya clause.  This interpretation is contrary to the plain meaning of the Himalaya clause, which refers to the Bill of Lading twice in a single (albeit very long) sentence.  The first reference specifies that the clause limits the agent's liability "to the Shipper, Consignee or Owner of the goods or to any holder of this Bill of Lading."  In the second reference, the clause states that "for the purpose of all the foregoing provisions of this Clause," agents shall "be deemed to be parties to the contract in or evidenced by this Bill of Lading."  The court concludes that the reasonable interpretation of the clause, when all parts are read together, is that the protections it offers to an agent cover only those acts undertaken by the agent in the course of employment connected to the particular Bill of Lading in question, in other words, those actions that might benefit "the Shipper, Consignee or Owner of the goods or . . . any holder of this Bill of Lading."  To interpret the clause in the manner urged by Shippers would ignore the two references to the Bill of Lading, and would produce the irrational result that a shipper, through the

---

[16](...continued)
Motion for "No Evidence" Partial Summary Judgment, Docket Entry No. 40, p. 3.

Bill of Lading, exempts a party from liability for negligent acts that have nothing to do with the party's duties relevant to the Bill of Lading.  The court concludes that such an interpretation is contrary to the intent of the parties expressed in the Generator Bill of Lading.

The undisputed facts show that Shippers' course of employment connected to the Generator Bill of Lading had ended before the accident in which the generator was damaged. Because Shippers has produced no evidence that it was acting in the course of employment connected to the Generator Bill of Lading at the time of the accident, the court concludes that Shippers is not entitled to claim the COGSA limitations on liability in this action.

This conclusion is consistent with case law interpreting the scope of Himalaya clauses.  Two prior district court opinions involving similar facts help clarify when the protections of such clauses apply.  In Singh v. M/V Saudi Diriyah, 1991 WL 538677 (S.D. Tex.), an automobile that the plaintiff was shipping from Dubai to New York was damaged when stevedores dropped wire coils on it during a stop in Houston.  The stevedores in Houston, who were not involved in the loading or handling of the automobile in Dubai, sought to invoke COGSA limitations of liability under the Himalaya clause in the automobile's bill of lading.  Id. at *1.  The court in Singh refused to extend to the stevedores the carrier's protections under the automobile's bill of lading because the stevedores were not involved in any way with the contract of

-14-

carriage for the car.  Id. at *2-3.  While Singh was factually different from the present case since it involved a different Himalaya clause and two sets of stevedores operating on different days in different ports, it does support the proposition that a stevedore can only invoke the protections in a bill of lading's Himalaya clause for actions taken in the course of employment connected to that bill of lading.

Parker Hannifin Corp. v. Ceres Marine Terminals, Inc., 935 F.Supp. 632 (D. Md. 1996), illustrates when application of a Himalaya clause on similar facts is appropriate.  In Parker the defendant stevedores were storing two crates of machinery for the plaintiff in anticipation of loading the crates onto a ship when the stevedores dropped another piece of cargo onto the crates.  Id. at 633.  As in the current action and in Singh, when the accident occurred the stevedores were handling cargo governed by a bill of lading separate from that governing the plaintiff's cargo.  In Parker, however, the court held that the COGSA limitations were available via the Himalaya clause because the stevedores were specifically tasked with storing the goods at the time of the accident.  Thus, even though the accident occurred while the stevedores were handling cargo governed by a separate bill of lading, the damage occurred while the stevedores were still acting in the course of employment regarding the plaintiff's cargo.  Id. at 637.  In the current action, by contrast, Shippers had no further duties regarding Raytheon's generator after it was loaded onto the ship.

**D.  Conclusion**

The court concludes that when the accident occurred Shippers was not acting in the course of employment connected with the Generator Bill of Lading.  Therefore, the carrier's defenses under the Bill of Lading do not extend to Shippers via the Himalaya clause.  Because Shippers' motions for summary judgment are based on the applicability of COGSA defenses through the Himalaya clause, these motions fail as a matter of law.  Furthermore, because Shippers has failed to provide any evidence showing that it was acting in the course of employment connected to the Raytheon Bill of Lading when the accident occurred, the court concludes that Raytheon is entitled to summary judgment on its claim that Shippers may not invoke COGSA limitations of liability via the Himalaya clause.

## IV.  Conclusion and Order

For the reasons explained above, the court concludes that Shippers is not entitled to the COGSA limitations of liability through the Generator Bill of Lading.  Accordingly, Shippers' Motion for Summary Judgment or, Alternatively, Motion for Partial Summary Judgment (Docket Entry No. 37) is **DENIED**.  Raytheon's Cross-Motion for "No Evidence" Partial Summary Judgment Against Shippers (Docket Entry No. 39) is **GRANTED**.

**SIGNED** at Houston, Texas, on this the 25th day of June, 2010.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE